## Stewart's Estate. Bell's Appeal.

*Will—Distribution—Heirs—Limitations.*

Where a testator directs that after the expiration of a particular interest his estate shall go to his " right heirs according to the intestate law of the state of Pennsylvania," he is to be understood as meaning the persons who would have taken at the time of his death and not at the time appointed for their taking, unless the will affords clear and unequivocal evidence to the contrary. The fact that the person to whom the prior estate is given, though his death is to precede the ultimate limitation, is himself an heir, does not change the result.

*Representation among collaterals.*

As representation does not extend beyond children of uncles and aunts, and grandchildren of brothers and sisters, first cousins take to the exclusion of second cousins.

*Collateral inheritance tax—Presumption of payment.*

After forty-two years, collateral inheritance tax will be presumed to have been paid, not only on the ground of lapse of time, but also from the presumption that the executor did his duty under his oath of office.

Argued Jan. 29, 1892. Appeal, No. 108, Jan. T., 1892, from decree of O. C. Philadelphia Co., July T., 1879, No. 60, dismissing exceptions to the adjudication of the account of the Pennsylvania Company for Insurance on Lives and Granting Annuities, trustees under the will of Esther Stewart, deceased. Before PAXSON, C. J., STERRETT, MCCOLLUM, MITCHELL and HEYDRICK, JJ.

PENROSE, J., filed the following adjudication :

" By her will, proved March 6, 1849, the testatrix, E. Stewart, after giving one half her estate in trust for her sister, Maria

Smith, for life, with remainder to her appointees by will, and providing that if her sister died in her lifetime the share so given should follow the disposition made as to the other half of her estate, directed as to the other half as follows:

" ' And as to the other equal moiety I give, devise and bequeath the same in trust for the sole and separate use of my beloved sister, Margaret Bell, for her natural life, and upon the determination of that estate, then in trust for the sole and separate use of her daughter, my dear niece, Maria E. Swann, wife of Dr. Wilson Swann, for her natural life, the said Maria to receive from the trustees the rents and profits and interest and income upon her own receipt and for her own sole and separate use and free from the control of any person whatever, and upon the determination of that estate then in trust for the use of her child or children who shall be living at the time of her death and the issue of such as shall then be dead in such parts, shares and proportions, whether equal or unequal, and for such estates and interests as she, the said Maria, by any instrument in writing in nature of a last will shall direct, limit and appoint as aforesaid, and in default of such appointment then to and among the said child or children and issue in equal shares absolutely, but the issue of a deceased child nevertheless to take only the share which their parent, if living, would have taken in default of appointment aforesaid, and if there be no such child or children or issue then living at the death of the said Maria, then in trust for the sole and separate use of my said sister, Maria Smith, and her heirs forever upon the same trusts and with the same powers and authorities and in all respects in the same manner as I have hereinbefore devised and bequeathed the other moiety of my said estate. But if at the death of my said niece, Maria E. Swann, having no issue as aforesaid, my said sister, Maria Smith, should be herself then dead, I then give, devise and bequeath the said moiety of the said residuary estate to my right heirs according to the intestate law of the state of Pennsylvania.'

"Margaret Bell died as represented to the court, March 16, 1854, intestate, a widow, leaving an only child, Maria E. Swann. Mrs. Swann survived her husband and died without children or issue, March 1, 1891, leaving a will, the codicil to which it was stated is now the subject of contest.

" The present account, which was admitted to be correct, is of the estate so held in trust for Mrs. Bell and Mrs. Swann, and the only questions presented for the consideration of the auditing judge were : Is the estate now subjected to the payment of collateral inheritance tax; and to whom does it go under the direction that if at the death of Mrs. Swann without children, etc., Mrs. Smith should also be dead, " then I give, devise and bequeath the said moiety to my right heirs, according to the intestate laws of Pennsylvania ; "—Mrs. Smith having died June 7, 1881, without children or issue, but leaving a will of which F. M. Lewis is the executor.

" The estate passed collaterally at the death of the testatrix in 1849, and as the law then stood the tax was payable both upon the life estate and the estates in remainder at the expiration of a year thereafter : Mellon's Ap., 4 Amerman, 564. There is, therefore, a presumption of payment arising not only from the lapse of time, but from the presumption in favor of the performance of his duty by the executor under his oath of office. There is no evidence to overcome these presumptions nor, indeed, is there any claim by the commonwealth or even an assertion that the tax was not paid.

" The auditing judge is of the opinion that no tax is now demandable.

" At the death of the testatrix the person who would have taken her estate under the intestate laws of Pennsylvania were her sisters, Mrs. Smith and Mrs. Bell. At the death of Mrs. Swann, the person who, it is said, would then have so taken is Rev. John Bell, a first cousin living in England. There are also second cousins represented by Mr. Eastburn, but as representation does not extend beyond children of uncles and aunts and grandchildren of brothers and sisters, they cannot take, whether the question of heirship is determined at the death of the testatrix or the death of Mrs. Swann : Clendaniel's Est., 12 Phila. 54; Rogers's Est., 131 Pa. 382; Lindley's Ap., 102 Pa. 235. First cousins take to the exclusion of second cousins.

" The right of the sisters or their representatives under the gift to the right heirs seems no less clear. Property at the death of its owner passes to the persons indicated by the intestate laws, except so far as a valid will may have provided

otherwise. The rights thus conferred being statutory will prevail over all claims not established with absolute clearness; and in construing a will under which title is asserted by a stranger or person not claiming by immediate descent, all doubts will be resolved in favor of the heir or next of kin—it being a maxim that the heir will not be disinherited except by express words or by necessary implication. And hence where a testator directs that in a certain event after the expiration of a particular interest the estate shall go to his heirs or next of kin, or to the persons who would take under the intestate laws, etc., he is to be understood as meaning the persons who would have so taken at the time of his death and not at the time appointed for their taking, unless the will affords clear and unequivocal evidence to the contrary. The fact that the person to whom the prior estate is given, though his death is to precede the ultimate limitation, is himself an heir, does not change the result or show such unequivocal intention that he was not also to take as heir upon the happening of the contingency; nor is the word "then" as introductory of the limitation to be understood as an adverb of time, or as indicating anything else than the event in which the heirs, etc., are to take: Cable v. Cable, 16 Beav. 507; Ware v. Rowland, 2 Phill. C. C. 635, etc.

"This is text-book law (Williams on Executors, 1211, Theobald on Wills, 174, Hawkins on Wills, 99), recognized to its fullest extent in Pennsylvania. In Williams on Executors, supra, it is said, 'This construction ought to prevail whether the will speaks of the testator's own next of kin or the next of kin of some other person, unless the context demonstrates that such a construction would counteract the apparent intention of the testator. Where, indeed, the tenant for life is himself one of the next of kin, it was at one time thought that the rule was inapplicable, and that the next of kin living at the death of the tenant for life must have been intended. But the law is now settled by a long series of cases, that if there is nothing in the context of the will or the circumstances of the case, to control the natural meaning of the testator's words, his next of kin living at his death will be entitled, and that if the tenant for life happens to be one of such next of kin, or to be solely such next of kin, he is not on that account to be ex-

cluded. But where the context demonstrates that the person or persons to take under the description of next of kin is a person or persons to be ascertained at a future period, or that it is the testator's intention to exclude the tenant for life from the description of next of kin, the expression must necessarily be understood as meaning the testator's next of kin living at the time of the tenant for life.' But to lead to this result there must, as Mr. Williams states, be 'demonstration.'

" In Buzby's Ap., 61 Pa. 111, the subject is discussed by the late Mr. Justice WILLIAMS with the force and clearness which distinguished his opinions, and the statement in Redfield on Wills, as to the effect of a gift of a life estate to one who would take as heir upon the construction of a limitation at his death to the heirs of the testator, is commented on and shown to be contrary to the weight of modern authority. See also Rupp v. Eberly, 79 Pa. 141; Cowles v. Cowles, 53 Pa. 175; Bender v. Dietrick, 7 W. & S. 284; Brendlinger v. Brendlinger, 26 Pa. 132, etc.

" Of course, when the question is as to 'heirs,' etc., of one not the testator, inasmuch as such persons have no right whatever, except what the will, not the statute, gives them, a very different construction may be adopted, as it may also where the controversy arises under a deed, and no hereditary rights have been or can be acquired.

" An illustration of this will be found in Philadelphia Trust Company's Ap., 108 Pa. 311.

" It follows that the principal of the estate must now be awarded to the executor of Mrs. Smith and to the executor of Mrs. Swann (the death of her mother, Mrs. Bell, having taken place so long ago that it is safe to act upon the assumption that her estate has been fully administered and that distribution may be made) in equal shares.

" It was contended by Messrs. Hopkinson & Cadwalader that as the limitation to the heirs of the testatrix was only to take effect in case of the death of Mrs. Smith in the lifetime of Mrs. Swann, an intention to include her in the class thus indicated could not have existed. But the same argument applies with equal force to Mrs. Swann and to Mrs. Bell. The death of the latter must have preceded that of her daughter, and the death of the daughter without issue was the event upon which

the limitation over was dependent. We have seen, however, that this circumstance is not enough to demonstrate an intention to exclude.

"Had Mrs. Smith survived Mrs. Swann, she would under the will have taken the whole. Beyond that the testatrix did not care to control the devolution of her estate. She was then willing to let it go under the intestate laws, and this she declares in so many words: "In the event that my said sister should be herself then dead, I then give, devise, and bequeath the said moiety to my right heirs according to the course of the intestate laws of Pennsylvania."

"Intestacy, of course, relates back to the date of the death of the decedent: Miller v. Miller, 10 Metcalf, 393; Kingsbury. v. Scovill, 26 Conn. 349; Armstrong v. Grandin, 39 Ohio, 368.

"The balance of the principal shown by the account in addition to the securities there mentioned is $994.47.

Deduct clerk's fees, $15. Certified copy of adjudication ——
The balance                                              $——
with the securities so mentioned, is awarded one half to the executor of Mrs. Smith, and one-half to the executor of Mrs. Swann.

"Of the balance of income, $184.62, so much as accrued in the lifetime of Mrs. Swann is awarded to her executor; so much as accrued since her death is awarded one half to her executor, and one half to the executor of Mrs. Smith.

"A schedule of distribution will be prepared by the accountant, which, when approved, will be annexed and made a part of this adjudication. Leave is given to make all necessary transfers.

"It is ordered and adjudged that the account be confirmed nisi on payment of clerk's fees, and that payment and distribution be made as above indicated."

Exceptions to the adjudication were dismissed by the court.

*Errors assigned* were (1) in awarding the trust estate of Maria E. Swann, one half to the executor of the will of Maria E. Swann, and one half to the executor of the will of Maria Smith; (2) in not awarding the said trust estate to the appellant, John Bell; (3) in deciding that the right heirs of Esther Stewart were to be ascertained, under the terms of her will, as of the time of her death; (4) in not deciding that the right

1892.] Assignments of Error—Opinion of the Court.

heirs of Esther Stewart, as intended by her will, were those who answered the description at the date of the death of Maria E. Swann ; (5) in not deciding that, as Maria E. Swann died without issue, and her power of appointment was restricted to her children, no part of the said trust estate could pass under her will.

*William A. Porter, Frederick J. Geiger* with him, for appellant.

*John G. Johnson, J. Percy Keating, Edward Hopkinson, John Cadwalader* and *Edward S. Sayres* with him, for appellees.

PER CURIAM: February 8, 1892.

This decree is affirmed upon the opinion of the learned judge of the orphans' court, and the appeal dismissed at the cost of the appellant.