## Noel's Estate

*Robert E. Wible*, for appellant.
*Bulleit & Bulleit*, for Commonwealth.

SHEELY, P. J., October 4, 1941.—This is an appeal from the inheritance tax appraisement in the estate of Agideous Noel, deceased. Dr. Noel died on March 18, 1905, leaving a will wherein he created a life estate for his wife and directed that after her death the balance of his estate, after repayment to his wife's estate of $1,500, should be divided into three shares, one of which

should be given to her children, Wellington, Franklin, and Landis Swope, and the other two shares to other named legatees. The life tenant died on January 13, 1916, and on March 30, 1917, the executors filed their second and final account including a credit item of "collateral inheritance taxes $160.39," which was confirmed, showing a balance in their hands of $3,240.45. On January 11, 1917, the executors presented their petition to the orphans' court alleging that the share of Franklin Swope, amounting to $360.25, could not be paid because he could not be located, and praying that this amount be paid into court and the executors discharged. An order was made as prayed for, and on July 12, 1917, the sum of $360.25, less costs of $3.60, or a balance of $356.66 (sic), was paid into court.

Nothing further appears to have been done in the estate until on August 30, 1939, William L. Meals, Esq., applied for and was granted letters d. b. n. c. t. a. on the estate of Dr. Noel. On May 28, 1941, the inheritance tax appraiser of the Commonwealth of Pennsylvania filed his appraisement of "balance as shown as per second and final account which was confirmed by the court on March 30, 1917, $3,240.45," stating on his appraisement that "this is an appraisement of the remaining assets of this decedent after the death of the life tenant, the life tenant having died January 13, 1916," and "the original appraisement in this estate was filed on April 10, 1905." The administrator d. b. n. c. t. a. of the estate of Dr. Noel then filed this appeal from the appraisement alleging that there is no tax due for the reasons therein set forth.

The Commonwealth seeks to have the appeal dismissed on the ground that appellant fails to allege facts showing that he has any interest in the subject matter of the appeal, and that the bond filed fails to give security to pay all costs together with whatever tax shall be fixed by the court, and the appeal fails to set forth facts which would support an order determining any

question of valuation or of the liability of the appraised estate for the tax appealed from.

The only authority cited by the Commonwealth in support of the proposition that an administrator or an executor is not a proper party appellant in a tax appeal is Schaszberger's Estate, 34 D. & C. 367 (1938), decided by President Judge Gross of the Orphans' Court of York County. The appraisement in that case was of real estate, and the decision is therefore not applicable to the present case. As Judge Gross points out (p. 371):

"It is true, as a legal proposition, that an executor, unless the will of testator gives him jurisdiction over real estate, or an administrator, unless jurisdiction is conferred upon him by the orphans' court, has no right to appeal from the appraisement for transfer inheritance tax purposes, *because there is no duty devolving upon a fiduciary of this sort to collect or to exercise any offices in the matter of the collection or payment of the transfer inheritance tax.*" (Italics supplied.)

In the case of personal property, however, the fiduciary is directly responsible under sections 15 and 16 of the Act of June 20, 1919, P. L. 521, for the collection and payment of inheritance tax thereon. In fact, unless the legacy be specific, the legatee has no interest in any particular item of personal property and does not know until the accounts are settled whether there will be sufficient assets to pay his legacy. Where the appraisement is of personal property, it is not only the right but the duty of a fiduciary to appeal from an excessive appraisement, and where the appraisement is of real estate he has a similar duty if he has been given jurisdiction over the real estate.

Section 13 of the Act of June 20, 1919, P. L. 521, as amended, provides for appeals from appraisements "on paying or giving security to pay all costs, together with whatever tax shall be fixed by the Court." The bond filed in this case was for costs only and did not cover

"whatever tax shall be fixed by the Court." The Commonwealth concedes, however, that the bond may be perfected or an amended bond filed nunc pro tunc: Commonwealth v. City National Bank, 41 D. & C. 150. In view of our ultimate conclusion, the amendment would be useless and we will not require it.

We come to the important question of whether the Commonwealth may file an appraisement appraising the remainder of an estate after a life estate more than 25 years after the death of the life tenant and 24 years after the confirmation of the second and final account of the executors and their discharge. The question arises as to what assets the Commonwealth appraised. The records show that the entire estate of Dr. Noel was distributed, the share of Franklin Swope having been paid into court. The Commonwealth, however, attempts to appraise "the balance as shown as per second and final account which was confirmed by the court on March 30, 1917." The appraisement does not indicate whether the property appraised consisted of cash, securities, or real estate, and it is clear that the appraiser cannot appraise a "balance" without appraising and indicating the property included therein. The appraisement in this case is therefore defective on its face.

The tax on the remainder after the life estate became due upon the death of the life tenant on January 13, 1916. Appellant relies upon the presumption of payment of debts unclaimed and unrecognized for 20 years, and the Commonwealth has offered no testimony to show that all taxes due on the Noel estate have not been paid: See Frey's Estate, 342 Pa. 351. In Stewart's Estate, 147 Pa. 383 (1892), where an attempt was made to collect collateral inheritance taxes 42 years after they became due it was held that there was a presumption of payment arising not only from the lapse of time but from the presumption in favor of the performance of his duty by the executor under his oath of office, and, there being no evidence to overcome these presump-

tions, no tax was then demandable. This case was cited with approval in Ash's Estate, 202 Pa. 422, where it was held that the Commonwealth, like all other suitors, must meet the burden of proof, and is subject to the presumption of payment from the lapse of time. The same result was reached in Fasig's Estate, 20 Dist. R. 77, where the appraisement was filed 46 years after the death of testator. It was there stated that, where the Commonwealth asserts a claim for collateral inheritance tax more than 20 years after the right of the State accrues, without introducing evidence explanatory of its delay in the presentation of its claim, the presumption arising from mere lapse of time is strengthened by the further presumption that the register of wills and the personal representative of decedent have performed their duties: See also Sheirich Estate, 7 D. & C. 433. In the present case the presumption of payment arising from the lapse of time is strengthened by the credit item in the second and final account of the executors indicating payment of collateral inheritance tax of $160.39, which would be approximately the tax due on the balance of the estate.

The Commonwealth contends that the question of payment of the tax cannot be raised by appeal from the appraisement. Section 13 of the Act of June 20, 1919, P. L. 521, as amended, provides that upon such appeal the court may determine all questions of valuation and of the liability of the appraised estate for such tax. We think that the question of liability of the appraised estate for the tax includes the question of whether the tax had been previously paid, and that the statute contemplates that all matters in dispute relative to the tax are to be determined upon appeal.

We conclude that the appraisement filed in this case was not an appraisement within the meaning of the Inheritance Tax Act, but was merely a statement of the Commonwealth's claim, and further, the tax due on the estate of Dr. Noel having been paid, there was no basis for any appraisement.

And now, October 4, 1941, the appeal from the appraisement for inheritance tax purposes in the estate of Dr. Agideous Noel, deceased, is sustained, and the appraisement stricken off.