324 F.2d 458
 DAUPHIN DEPOSIT TRUST COMPANY, Conway H. Olmsted, Henry C. Olmsted and Spencer G. Nauman (Now Deceased), Co-Executors of the Estate of Gertrude McCormick, Deceased, Appellants,
v.
E. A. McGINNIS.
 No. 14357.
 United States Court of Appeals Third Circuit.
 Argued September 20, 1963.
 Decided November 7, 1963.
 
 James H. Stewart, Jr., Harrisburg, Pa. (James S. Bowman and Nauman, Smith, Shissler & Hall, Harrisburg, Pa., on the brief), for appellants.
 Joseph Kovner, Dept. of Justice, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Melva M. Graney, Martin B. Cowan, Attorneys, Department of Justice, Washington, D. C., Bernard J. Brown, U. S. Atty., on the brief), for appellee.
 Before McLAUGHLIN, STALEY and HASTIE, Circuit Judges.
 STALEY, Circuit Judge.
 
 
 1
 This appeal requires us to determine whether plaintiffs' decedent, Gertrude McCormick, had such an interest in two separate trusts at the time of her death that they are includible in her gross estate under the applicable provisions of the Internal Revenue Code of 1939. In a suit for refund of estate taxes, the district court answered this question in the affirmative. 208 F.Supp. 228 (M.D.Pa., 1962).
 
 
 2
 The parties entered into a stipulation of the operative facts in the district court. Because a resolution of the issues presented requires an analysis of two distinct and unrelated trusts, we shall accord separate treatment to each.
 
 
 3
 THE TESTAMENTARY TRUST.
 
 
 4
 Decedent's former husband, Marlin Edgar Olmsted, died testate on July 19, 1913. The trust created by the residuary clause of his will, dated July 10, 1913, gives rise to the first issue in the present controversy. Accordingly, we set forth that clause in its entirety:
 
 
 5
 "The rest, residue and remainder of my estate, real personal and mixed, I give, devise and bequeath to my executors hereinafter named in trust, to manage and dispose of as herein directed, the said executors to have power to sell and convey any and all stocks and securities and any real estate not specifically devised herein, according to their best judgment whenever necessary or desirable and to re-invest the proceeds thereof, or any other funds, in other securities or in real estate, but except for the payment of the bequests above set forth, the estate is to remain intact until the twelfth day of June, Anno Domini One Thousand, Nine Hundred and Thirty (A.D. 1930), upon which date, or as soon thereafter as possible, my executors shall set apart and retain whatever real estate or securities may seem to them necessary to yield sufficient income to insure and protect the payment of the annuities herein provided, and the remainder of the items comprising the estate shall be separately estimated and appraised and the whole divided into eight (8) equal parts or shares, one share to be allotted to each of my five children above named and be delivered over to them absolutely, or in the event of the death of any of them before the said date, then the share of such child or children so deceased shall be delivered to or divided among the lawful heir or heirs of the child or children so deceased. The remaining three (3) parts or shares shall be retained by my said executors in trust and managed by them and the income thereof paid to my wife, Gertrude Howard Olmsted, so long as she shall live, and upon her death the said three parts or shares and the remainder of my estate, if any, after my executors shall have set apart and retained whatever real estate or securities may seem to them necessary to yield sufficient income to insure and protect the payment of any annuities herein provided and then remaining to be paid, shall again be separately estimated and appraised and shall be divided into five (5) equal shares, one share to be allotted to each of my five children above named and to be delivered over to them absolutely, or in the event of the death in the meantime of any of them, then to the lawful heirs of the child or children so deceased, as above set forth. In the divisions above provided for, the parties entitled to receive parts or shares shall, if possible, agree among themselves as to which particular part or share each one shall have, but in the event of their failure so to agree, the distribution shall be made by lot."
 
 
 6
 In accordance with the first dispositive provision of this clause, distribution of five-eighths of the residuary estate was made shortly after June 12, 1930, in equal shares to the five named children who were then all living. Pursuant to the testator's direction, three-eighths of the principal was held in trust for testator's wife for life with the remainder to be distributed on her death under the second dispositive provision of the residuary clause.
 
 
 7
 On February 8, 1931, Marlin E. Olmsted, Jr., one of the five named children, died intestate, unmarried, and without issue. As Gertrude McCormick was his only heir at law under the then intestate laws of the Commonwealth of Pennsylvania, she inherited his one-eighth share under the first dispositive provision of the residuary clause. Upon Gertrude McCormick's death on January 24, 1953, Dauphin Deposit Trust Company distributed four-fifths of the remaining principal equally to the four surviving children of testator in their own right. One-fifth of the principal was then paid in equal shares to these surviving children as the lawful heirs of Marlin E. Olmsted, Jr., as ascertained at the death of Gertrude McCormick. It is this one-fifth interest in the remainder which is the center of the present dispute. The value of that interest has been stipulated at $779,284.99. Distribution was made by the trustee with the approval of the four surviving children who executed releases in its favor. However, no formal accounting of the administration of the trust or petition for distribution was presented to the Orphans' Court of Dauphin County for approval.
 
 
 8
 Dauphin Deposit Trust Company subsequently filed a First and Final Account in the Orphans' Court of Dauphin County covering certain unadministered assets and cash which had not passed to the trustees under the will of Marlin Edgar Olmsted. The account showed a balance of $9,428.44, and the proposed schedule of distribution provided for disposition in the same manner as that used in distributing the principal in the residuary clause following the death of Gertrude McCormick. The schedule of distribution was confirmed nisi by decree of the Orphans' Court on December 18, 1958, and this decree became final when no exceptions were filed to it.
 
 
 9
 The question presented by the foregoing facts is whether at the time of her death Gertrude McCormick had a taxable interest in the remainder created by the second dispositive provision of the residuary clause as the lawful heir of Marlin E. Olmsted, Jr. As stated by the parties, the answer to that question turns upon whether the "lawful heirs" referred to in that provision were to be ascertained at the death of the life tenant, Gertrude McCormick, or at the death of the designated beneficiary, Marlin E. Olmsted, Jr. If the heirs were not to be ascertained until Gertrude died, she had no interest in the remainder upon which the estate tax could be based.[1] If, however, the testator intended that the heirs of a deceased child were to be ascertained at the time of that child's death, she had such an interest, for it is conceded that at the time of Marlin Jr.'s death Gertrude was his sole heir under the intestate law.
 
 
 10
 We are met at the threshold with the plaintiffs' contention that the decree of the Orphans' Court of Dauphin County holding that the life tenant under no theory was entitled to share in the distribution of the $9,428.44 in unadministered assets precludes us from considering anew the residuary clause in the will of Marlin Edgar Olmsted. It is urged that because the state court decree necessarily and expressly encompassed an interpretation of testator's will, that interpretation is not subject to collateral attack in this court under our decision in Gallagher v. Smith, 223 F.2d 218 (C.A.3, 1955).
 
 
 11
 In Gallagher we held that a state court judgment has binding effect in a federal tax case only if "the judgment is an adjudication by the state court of a property right upon which solely the federal tax is imposed, which adjudication was and is final and binding upon the parties under the state law, and which was not obtained by collusion for the purpose of defeating the tax." 223 F.2d at 226. It is undisputed that the state court decree in the case at bar did not purport to adjudicate any rights in the property now before us; it merely adjudicated rights in the $9,428.44 in unadministered assets. Indeed, Dauphin Deposit Trust Company's petition in the Orphans' Court expressly stated, "Whether or not the foregoing interpretation of the will was correct for the purpose of distribution of the remaining portion of the three-eighths principal of said trust is not in issue here, but the same question has arisen and is in issue in the distribution of the assets which are the subject of this accounting." (Emphasis supplied.)
 
 
 12
 Nevertheless, the plaintiffs urge that the rule of Gallagher is applicable although the right to the remaining principal was never before the Orphans' Court for adjudication. But Gallagher makes it essential that the state tribunal adjudicate the rights to the specific property which is the subject of the federal tax. The necessity for such an adjudication is underscored in the present case, for plaintiffs' counsel conceded at oral argument that the decree providing for the distribution of the unadministered assets would not be binding in another proceeding to determine rights to property not covered by that decree. In re Harbison's Estate, 365 Pa. 468, 76 A.2d 187 (1950); In re Edward's Estate, 360 Pa. 504, 62 A.2d 763 (1949); In re Kellerman's Estate, 242 Pa. 3, 88 A. 865 (1913). Thus, with respect to the property before us the state court decree was not even binding upon the parties themselves. It would be anomalous indeed to hold that it was binding on the United States.[2]
 
 
 13
 Our decision on this aspect of the case must therefore depend upon a construction of the will in the context of the applicable Pennsylvania law. Of course, it is undisputed that under the Pennsylvania law the intention of the testator is the polestar in the interpretation of every will; that that intention must be ascertained from a consideration of the entire will, including the language used, the scheme of distribution, and the attendant circumstances; and finally, that rules of construction are resorted to only when the language of the will is ambiguous or the intent of the testator uncertain. In re Burleigh's Estate, 405 Pa. 373, 175 A.2d 838 (1961).
 
 
 14
 Our first inquiry then must be directed to the language of the will, particularly to the residuary clause here in issue, in an attempt to discern the intent of the testator. It will immediately be noted that in the first dispositive provision of that clause the testator directed that the residue of his estate should be kept intact until June 12, 1930, and that after retaining a portion of the corpus for the payment of various annuities, the remainder was to be divided into eight equal shares, "one share to be allotted to each of my five children above named and be delivered over to them absolutely, or in the event of the death of any of them before the said date, then the share of such child or children so deceased shall be delivered to or divided among the lawful heir or heirs of the child or children so deceased." It is not disputed that when Marlin Jr. died in 1931, unmarried, without issue, and intestate, Gertrude McCormick inherited his share under this provision. Moreover, the plaintiffs acknowledge that had Marlin Jr. died prior to June 12, 1930, his mother would have been entitled to his share as his lawful heir. The plaintiffs reason that under the first dispositive provision, "The class `lawful heirs' was to be determined on June 12, 1930 and whoever constituted that class on that date was entitled to distribution." It is urged that under the second dispositive provision, however, testator intended that the "lawful heirs" were not to be ascertained until the death of the life tenant, Gertrude McCormick. But the very language of that provision belies this construction, for in it the testator provided for distribution of the remaining principal upon the death of the life tenant to his children, "or in the event of the death in the meantime of any of them, then to the lawful heirs of the child or children so deceased, as above set forth." (Emphasis supplied.) Thus Marlin Edgar Olmsted clearly manifested his intention that the "lawful heirs" in the second clause were to be ascertained in the same manner as those referred to in the first. As the district court cogently and incisively pointed out:
 
 
 15
 "* * * In this provision [the first] there was a right to future enjoyment on June 12, 1930, and in the second provision there was a right to enjoyment on the termination of a life estate. There is nothing here to indicate a different intent. The testator must have known that if any of his children died unmarried before testator's widow, she would be the `lawful heir' in whom the right would vest in either instance and if any other intent were involved on his part, could easily have used other language. It must be borne in mind that the will was executed on July 10, 1913 (testator dying on July 19, 1913) and that at that time the youngest child was about four years old and the oldest not over seventeen and there was a possibility that the mother (testator's widow) might easily be (as she actually was in the case of Marlin E. Olmsted, Jr.) the sole lawful heir of all of the five children, if they predeceased her. Had testator intended to bar the widow as a `lawful heir' and (as plaintiffs contend) intended to limit the taking to issue of such children he could have and undoubtedly would have used such more restrictive term instead of `lawful heirs.'" 208 F. Supp. at 233-234.
 
 
 16
 Moreover, even assuming arguendo that the intent of the testator is unclear, an analysis of the rules of construction prevailing at the time this will was written compels the conclusion that the heirs of Marlin Jr. must be determined at the time of his death, and not at the death of the life tenant. The development of the Pennsylvania law on this subject is concisely summarized in Brégy, Intestate, Wills and Estates Acts of 1947 (Pennsylvania), Wills Act § 14 (4), ¶¶ 7, 9. The common-law rule, in effect at the time this will was executed, is, in the absence of a direction to the contrary, that a reference to heirs or words of similar import in a remainder clause following a life estate requires that the heirs be determined at the death of the designated ancestor. This rule applies regardless of whether the heirs referred to in the remainder clause are those of the testator or, as in the case at bar, those of one other than the testator.[3] In re Thompson's Estate, 363 Pa. 85, 69 A.2d 112 (1949) [heirs of testator]; Dutilh's Estate, 286 Pa. 389, 133 A. 548 (1926) [heirs of a life tenant]; Milligan's Estate, 244 Pa. 161, 90 A. 552 (1914) [devisees or heirs of a life tenant]; In re Swann's Estate, 147 Pa. 383, 23 A. 599 (1892) [heirs of testator]; Buzby's Appeal, 61 Pa. 111 (1869) [heirs of testator]. See also, Heaton's Estate, 404 Pa. 360, 172 A.2d 293 (1961); Love's Estate, 362 Pa. 105, 66 A.2d 238 (1949).[4]
 
 
 17
 The plaintiffs have advanced a number of arguments which they assert show that the testator manifested a contrary intent, but we are not impressed. The contentions that the heirs were intended to take as purchasers, that different dispositions were intended as to the pecuniary bequests and the trust principal, that the language of the will is "in futuro", and that the testator contemplated living distributees are not persuasive and are not inconsistent with our conclusion. Nor is it significant that the life tenant could not survive until the time when the remainder became possessory. In re Thompson's Estate, 363 Pa. 85, 69 A.2d 112 (1949); In re Swann's Estate, 147 Pa. 383, 23 A. 599, 600-601; Buzby's Appeal, 61 Pa. at 116-117. In sum, the intent of the testator as gleaned from the language used in the will coupled with the legal effect to be given to the words "lawful heirs" cannot be gainsaid by such tenuous arguments.[5]
 
 
 18
 The decision in In re Burleigh's Estate, 405 Pa. 373, 175 A.2d 838 (1961), merely emphasizes that each case depends upon an assessment of its particular facts, a rule perhaps best expressed in the axiom quoted in that opinion, "few wills have a twin brother." 175 A.2d at 841. In that case the circumstances surrounding the testator at the time the will was executed indicated that he intended a gift to those heirs of his brother and sister who were living at the death of the last surviving life tenant.
 
 
 19
 THE INTER VIVOS TRUST.
 
 
 20
 On January 8, 1935, Gertrude McCormick created an inter vivos trust naming Dauphin Deposit Trust Company as trustee. The third clause of that instrument provided:
 
 
 21
 "The Settlor reserves to herself the right to alter, amend or revoke this agreement either in whole or in part, provided however, that said agreement shall not be revoked nor altered nor amended in such manner as to change the beneficiaries hereunder or the benefits to which they are respectively entitled without the consent of the said Jane C. Howard during her lifetime and after the death of the said Jane C. Howard without the consent of Gertrude O. Nauman, daughter of the Settlor."
 
 
 22
 Following the death of one of the life tenants, an amendment was made to this trust in 1948 which changed the dispositive provisions. Plaintiffs contend that the power of alteration, amendment, or revocation contained in the original trust instrument was exhausted by the 1948 amendment and that therefore the decedent had no interest in this trust at the time of her death within the meaning of § 811(d) (2) of the Internal Revenue Code of 1939.[6]
 
 
 23
 We hold to the contrary. The parties agree that the only recent Pennsylvania decision on this issue is that of the Orphans' Court of Philadelphia County in Goodell's Estate, 53 Pa.Dist. & Co.R. 13 (1945); our research has disclosed no other. Although not an appellate court ruling, that decision contains an exhaustive and persuasive review of the law on the subject and rejects the view advanced by the plaintiffs in the case at bar. We are convinced that the conclusion there reached is in accord with the law of Pennsylvania, and that under that law Gertrude McCormick had power to alter, amend, or revoke this trust at the date of her death. See also In re Estate of Huested, 403 Pa. 185, 169 A.2d 57 (1961). Accordingly, the value of that trust was includible in her gross estate.
 
 
 24
 The plaintiffs' reliance on our holding in Day v. Commissioner of Internal Revenue, 92 F.2d 179 (C.A.3, 1937), is misplaced, for in that case "the creator revoked, ended, and extinguished all interest in the trust estate, and thereafter and at the date of his death he had no part or lot therein". 92 F.2d at 180.
 
 
 25
 The judgment of the district court will be affirmed.
 
 
 
 Notes:
 
 
 [1]
 The pertinent portion of the governing tax statute provides:
 "§ 811. Gross estate.
 "The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside the United States —
 "(a) Decedent's interest.
 "To the extent of the interest of the decedent at the time of his death * * *." Int.Rev.Code of 1939, § 811 (a), 26 U.S.C. § 811(a) (1952 ed.).
 
 
 [2]
 Our conclusion on this issue makes it unnecessary for us to consider the intimation in defendant's brief that the Orphans' Court decree may have been obtained by collusion
 
 
 [3]
 In this regard the district court noted that the testator was an attorney of recognized ability who was thoroughly familiar with the legal terms used in the drafting of wills
 
 
 [4]
 It might be pointed out that this rule of construction was changed as to a reference to the heirs of the testator by the Act of June 29, 1923, P.L. 914, 21 Purdon's Pa.Stat.Ann. § 11. In the Wills & Estates Acts of 1947, 20 Purdon's Pa. Stat.Ann. §§ 180.14, 301.14, the change was extended to cover the heirs of one other than the testator or conveyor. These Acts now provide that in the absence of a contrary intent "[t]he time when such class is to be ascertained shall be the time when the devise or bequest is to take effect in enjoyment." However, the plaintiffs admit that neither of these statutes apply to the will in the case at bar, and the cases cited above show that this was not the rule at the time the will of Marlin Edgar Olmsted was executed
 
 
 [5]
 It will be recalled that we have held earlier in this opinion that the Orphans' Court decree is not conclusive on this point. Moreover, because that decree related solely to the distribution of $9,428.44 in unadministered assets, and in the light of the Pennsylvania law and our own analysis of the language of the will, we do not consider that decree persuasive on the question of the proper interpretation of the residuary clause. We point out further that the Orphans' Court articulated no reasons to support its construction but simply stated, "The supporting data for this construction and for the applicable law will be found in the file,but we deem it unnecessary to discuss it further, since there is not controversy in the matter." (Emphasis supplied.)
 
 
 [6]
 That section provides:
 "§ 811. Gross estate
 "The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States —
 * * * * *
 "(d) Revocable transfers
 * * * * *
 "(2) Transfers on or prior to June 22, 1936.
 "To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke * * *." Int.Rev.Code of 1939, 26 U.S.C. § 811(d) (2) (1952 ed.).