ESTATE OF PEGGY COOK COBB, DECEASED, PEGGY JUNE GRIFFIN, EXECUTRIX, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Cobb v. Commissioner
Docket No. 4332-79.
United States Tax Court
T.C. Memo 1982-571; 1982 Tax Ct. Memo LEXIS 178; 44 T.C.M. (CCH) 1281; T.C.M. (RIA) 82571; September 29, 1982. Peggy June Griffin, pro se. Vallie C. Brooks, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined a deficiency in the estate tax of the estate of Peggy Cook Cobb in the amount of $85,920.32. Some of the issues raised by the pleadings have been disposed of by agreement of the parties leaving for our decision the following: (1) was the assessment and collection of a deficiency in estate tax barred by the statute of limitations at the time of the issuance of the notice of deficiency; (2) whether the value of an interest of Peggy Cook Cobb in the estate of her deceased husband arising by reason of a dissent she filed to his will is includable in the gross estate of Mrs. Cobb and, if so, the value of this interest; (3) whether the value of real property which was conveyed by Peggy Cook Cobb to her son and daughter by deeds executed on January 20, 1973, but not recorded until March 31, 1975, is includable in Mrs. Cobb's estate and, if so, *180 the value of the property; (4) what was the value at the date of Mrs. Cobb's death of a house and lot at 622 Shannon Avenue, Chattanooga, Tennessee; (5) what was the value at the date of Mrs. Cobb's death of 10 promissory notes secured by deeds of trust on the residences of the makers; (6) whether the balances of the various bank accounts maintained by Mrs. Cobb in her name on the date of her death are includable in her gross estate; and (7) whether the estate is entitled to a charitable deduction of $5,750 or any part thereof by reason of a statement in Mrs. Cobb's will. [1]
FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Peggy Cook Cobb (decedent) died on March 29, 1975. *181 Her daughter, Peggy June Griffin, is the executrix of her estate having qualified under the laws of the State of Tennessee. On the date of the filing of the petition in this case, Mrs. Griffin resided in Evensville, Tennessee. An estate tax return was filed by Mrs. Griffin, as executrix of Mrs. Cobb's estate, with the director of the Internal Revenue Service Center at Memphis, Tennessee, on March 31, 1976. On March 21, 1979, respondent mailed to Estate of Peggy G. Cobb, Peggy June Griffin, Executrix, Route 2, Box 165, Evensville, Tennessee 37332, a notice of deficiency in the estate tax of the estate. In 1965, decedent married Newton A. Cobb who was an attorney at law. Decedent was a real estate broker. In the latter part of 1966, decedent voluntarily moved out of the household of her husband and returned to her prior residence. However, decedent and her husband frequently visited each other and filed joint Federal income tax returns as long as her husband lived. Mr. Cobb died on February 24, 1975. On March 10, 1975, during her last illness and while in the hospital, decedent signed a dissent from the will of her husband which was filed in the office of the Probate Clerk *182 for Hamilton County, Tennessee. On August 6, 1975, the executrix of the estate of Newton A. Cobb filed a complaint for declaratory judgment against Peggy June Griffin individually and as executrix of the estate of Peggy Cook Cobb, deceased, and Dale F. Cook, in which she requested a declaration by the Court that Mrs. Cobb, the widow of Newton A. Cobb, is not entitled to a distributive share of Newton A. Cobb's estate. On March 4, 1976, the Chancery Court ruled that the dissent was valid and that Mrs. Cobb was entitled to a distributive share of her husband's estate under the statutes of the State of Tennessee. The estate of Newton A. Cobb filed an appeal from the holding of the Chancery Court to the Court of Appeals of Tennessee. The Court of Appeals, on October 22, 1976, affirmed the opinion of the Chancery Court and an appeal was taken to the Supreme Court of Tennessee. In an opinion filed on May 21, 1977, the Supreme Court of Tennessee affirmed the opinion of the Court of Appeals and the Chancery Court and remanded the case to the Chancery Court of Hamilton County for enforcement of the decree entered by that Court. The attorney who represented decedent's estate in the *183 declaratory judgment suit had initially been employed by Mrs. Cobb to file a dissent to the last will and testament of her husband, Newton A. Cobb. After decedent's death, Mrs. Griffin and her brother, Dale F. Cook, retained this same attorney on a contingency fee basis which provided that, if the attorney was successful in obtaining the statutory portion of the estate of Newton A. Cobb for decedent's estate, he was to charge a fair fee for the amount of work he did and, if he was not successful in sustaining the dissent, he was not to receive any fee. Prior to the trial of the case in the Chancery Court, the attorney discussed with Mrs. Griffin a basis for settlement of the case. He also discussed the basis of settlement with Mrs. Griffin's brother, Dale F. Cook. The attorney suggested that if the dissent had to be fully litigated, a reasonable fee for his work would be one-third of the maximum value of the widow's statutory interest in the estate of Newton A. Cobb. He pointed out that he understood that the maximum value of the widow's interest was $278,886.82 and, therefore, if the case were fully litigated and the dissent upheld, decedent's estate would end up with approximately *184 $185,000 after payment of the attorney's fee. He suggested that, considering the litigating hazards involved, Mrs. Griffin and Mr. Cook, on behalf of Mrs. Cobb's estate, might wish to make an offer to the estate of Newton A. Cobb to settle the dissent for $200,000. The attorney stated that, if the matter were settled, he would ask a fee of $25,000 leaving the estate of Mrs. Cobb with a balance of $175,000. Mrs. Griffin, as executrix of decedent's estate, with the consent of her brother, made the offer suggested by the attorney to the estate of Newton A. Cobb but the offer was rejected. On remand, the Chancery Court determined that decedent's estate was entitled to $278,886.82 as the widow's statutory interest in the estate of Newton A. Cobb and, in addition, was entitled to $23,273 as the pro rata share of decedent's estate in the income earned by the estate of Newton A. Cobb while action with respect to the dissent was pending. Decedent's estate paid inheritance taxes to the State of Tennessee in the amount of $13,827.64 leaving a net from the $302,160 received of $288,332. The attorney charged a fee of $88,332 which was paid on behalf of decedent's estate and decedent's estate *185 retained the remaining $200,000. The attorney who had represented decedent's estate in the dissent proceeding agreed to employ at his own expense a tax attorney to advise him on tax matters with respect to decedent's estate. He did employ such a tax attorney and, on December 18, 1975, this attorney requested an extension of time for filing the estate tax return for decedent's estate with the explanation that the litigation involving decedent's right to dissent from the will of her deceased husband had been set for trial on February 5, 1976. In the estate tax return filed for decedent's estate on March 31, 1976, the following statement appeared on the first page: NOTE: PEGGY G. COBB's estate is in litigation with the estate of NEWTON A. COBB whereby she as his widow is entitled to the widow's part of his estate. Thus this return is incomplete and cannot be finished until outcome of litigation is determined and is being filed to satisfy three months' extension allowed. After decedent's dissent to the will of her husband was upheld by the Supreme Court of the State of Tennessee, the tax attorney, who had been engaged to advise the attorney handling the dissent for the estate, *186 advised Mrs. Griffin that she should file an amended Federal estate tax return immediately to report the value of the interest of decedent in her deceased husband's estate. Mrs. Griffin did not follow the advice of the tax attorney. On January 20, 1973, three days after the execution of her last will, decedent executed a deed conveying to Mrs. Griffin for the stated consideration of $1.00 two parcels of real property located at 23 North Crest Road and 2928 Birds Mill Road. Also on January 20, 1973, decedent executed a deed whereby she conveyed to her son, Dale F. Cook, for the stated consideration of $1.00 real property located at 2009 McCaulie Avenue, Chattanooga, Tennessee. When Mrs. Griffin was talking to her mother sometime after January 20, 1973, Mrs. Cobb told Mrs. Griffin that she had executed the deed conveying the property to her. She told her that the deed had been drawn up by Mr. Cobb and she had executed it. Mrs. Griffin then saw decedent place the deed among some papers to which Mrs. Griffin believed she had access. In both her will executed on January 17, 1973, and a codicil to her will executed on March 15, 1975, decedent showed as her address 23 North Crest *187 Road, Chattanooga, Tennessee. The offices of decedent's real estate business, known as Peggy Cook Realty Company, were located at 2009 McCaulie Avenue, Chattanooga, Tennessee. Parts of each of the properties at 23 North Crest Road, 2928 Birds Mills Road, and 2009 McCaulie Avenue were rented and the rents from each of these parcels of property were reported by decedent and Mr. Cobb on the joint Federal income tax return they filed for the calendar year 1973 and were reported on the 1974 Federal income tax return filed on behalf of decedent by Mrs. Griffin as her executrix. On March 31, 1975, two days after the death of decedent, Mrs. Griffin and her brother went together to the courthouse in Chattanooga, Tennessee, to record the deeds to the three pieces of property which decedent had executed on January 20, 1973. On the deed conveying the property at 23 North Crest Road and 2928 Birds Mill Road to her, Mrs. Griffin executed a sworn statement that the actual consideration for the transfer was $29,000 which was equal to or greater than the value of the property transferred. Dale F. Cook executed a similar affidavit on the deed conveying the property at 2009 McCaulie Avenue to him *188 except that the amount he stated was the consideration for the property was $11,000. In 1971, the property located at 2009 McCaulie Avenue was appraised by Hamilton County, Tennessee, for real estate tax purposes at a value of $15,210. On May 5, 1976, Mrs. Griffin sold the real property located at 23 North Crest Road and 2928 Birds Mill Road to James C. Blevins and Joel C. Blevins for a total consideration of $30,000. On June 6, 1975, Mrs. Griffin, as executrix of decedent's estate, received an inspector's report from the Better Housing Commission of the City of Chattanooga stating that the structure at 622 Shannon Avenue was a public nuisance and eyesore in a "very nice neighborhood" and that it was not fit for human habitation in its present condition. The report stated that the property could be rehabilitated with extensive major repairs, the principal ones being that the exterior needed the repair of the roof and the rear porch floor and the interior needed the installation of a complete bathroom consisting of tub or shower, a flush-type commode, and a lavatory. The report stated that, if any rehabilitation was attempted, necessary permits and the use of only standard *189 materials and qualified workmanship was required. After receiving this notice, Mrs. Griffin and her husband arranged for the rehabilitation of the house as required by the Better Housing Commission of Chattanooga. Mrs. Griffin paid $1,500 to have the roof repaired and for other labor and materials. She and her husband and brother did some painting and wallpapering and made other repairs to the interior plumbing and wiring. On March 26, 1976, Mrs. Griffin sold the house and lot at 622 Shannon Avenue to Ronald Sanderfur for $10,000. At the date of her death, decedent was the owner of 10 separate mortgage notes on various pieces of real property which were occupied by the makers of the notes. The following schedule shows the name of the maker of the note, the date of the note, the principal amount of the note, and the balance of the note as of March 29, 1975: Date of
Balance at
Maker
Note
Principal
3-29-75
Willie & Mildred
Hamilton
3-24-74
$10,000.00
$ 9,438.95
William & Betty
Ramsey
7-18-73
5,750.00
5,049.35
Thomas Paris
12-21-74
4,400.00
4,241.29
Maurice (Morris)
Rogers, Jr.
11-22-72
5,700.00
4,357.87
Maurice (Morris)
Rogers, Jr.
1- 7-74
3,750.00
3,232.32
Harry & Mary Sisk
11- 1-74
10,250.00
10,005.21
Jack & Lulu Sisk
11-25-73
7,450.00
6,738.73
Joe Wright
6-10-74
4,500.00
4,189.03
Don Carden
8-27-73
7,453.75
6,775.98
Floyd Jordan or
Mark Jones
5-12-70
(unknown)
1,718.65
Total
$55,747.38
*190 Each of the notes listed above provided for the payment of interest at the rate of 7 percent per annum and was secured by deed of trust on a parcel of improved real property which was the residence of the maker. As of the date of the trial of this case in October 1981, each of the notes listed above had been paid in full with the exception of the Hamilton and Paris notes on which there was a balance of $6,657.30 and $404.80, respectively. In order to collect the Jack and Lulu Sisk note and the Don Carden note, Mrs. Griffin was forced to foreclose the mortgage securing each of such notes. At the foreclosure sale, Dale F. Cook, Mrs. Griffin's brother, bid in each of the properties for the balance due on the note to decedent's estate. After bidding in the properties for $5,732.15 and $6,198, respectively, Mr. Cook sold each of the properties for $6,000. At the date of her death, decedent maintained a checking account and a savings account with the American National Bank & Trust Co. of Chattanooga, Tennessee (American National Bank). The balances in these accounts as of the date of decedent's death were $3,006.77 and $4,035.07, respectively. The amounts in these accounts had *191 been deposited by decedent prior to her death from her own funds. At the date of her death, decedent also maintained a checking account at the Hamilton National Bank in Chattanooga, Tennessee. The balance of this account at the date of decedent's death was $4,994.72 and all of the funds in this account consisted of deposits made by decedent from her own funds. Decedent at the date of her death maintained a special checking account at the Hamilton National Bank, Chattanooga, Tennessee, which account was designated Peggy Cook Realty or Peggy June Griffin. At the date of decedent's death, the balance in this account was $121.19 which had been deposited in the account by decedent during her lifetime from her own funds. The following statements are included in section VI of decedent's last will and testament: I will, devise and bequeath unto my daughter, Peggy June Griffin, the following real and personal property: House and lot located at Rear 3227 South Street, Chattanooga, Tennessee, known as North 45 of West 27 of Loomis Tract, Greenwood Road and Lot next to 3227 South Street known as East Pt 26 Loomis Tract, 140 X 230. This house and lot next door shall be used by my dear *192 mother during her lifetime and she shall have the privilege of renting the house, collecting the rent and using it for herself during her lifetime and after her death my daughter, Peggy June Griffin, shall sell it, and use the money for herself, after giving ten percent of the proceeds into the Nazarene Church. I give unto my daughter all my personal property, such as furniture, china, linens and odds and ends. If she desires to sell any of them I desire that ten percent of the proceeds of the sale be given to the church. There was no other reference to any charitable contribution contained in decedent's will. On Schedule A of the estate tax return filed on behalf of decedent's estate, the house and lot at 3227 South Street was reported as having a total value of $8,050 and, on Schedule F, the value of decedent's household goods and personal effects was reported as being $1,000. On the estate tax return filed for decedent's estate, no amount was reported as the value of decedent's interest in the estate of her husband, Newton A. Cobb. The houses and lots at 23 North Crest Road, 2928 Birds Mill Road, and 2009 McCaulie Avenue were not reported on the estate tax return. *193 [2] The house and lot at 622 Shannon Avenue was reported on decedent's estate tax return as having a value at the date of decedent's death of $2,500. The promissory notes secured by mortgages made by the Hamiltons, Ramseys, Parises Rogers, Sisks, Mr. Wright, Mr. Carden, and Mr. Jordan or Mr. Jones were reported as having a total value at the date of decedent's death of $30,000. No amount was reported for the checking and savings accounts owned by decedent at the date of her death at the American National Bank or the checking account at the Hamilton National Bank or the joint account of Peggy Cook Realty or Peggy June Griffin at the Hamilton National Bank. On the estate tax return, a claim was made for charitable bequests of $5,750. Respondent in his notice of deficiency increased the amount of the estate as reported on the estate tax return by $200,000 of miscellaneous *194 property which was explained as follows: It is determined that the fair market value as of the date of decedent's death, of the claim against the Estate of Newton A. Cobb is includable in the gross estate in the amount of $200,000.00, being the amount paid the decedent's estate ($288,332.00) less the expenses ($88,332.00) of litigation instituted to collect said claim. Consequently, the value of other miscellaneous property includable in the gross estate has been increased by $200,000.00 Respondent increased the real estate as reported on petitioner's return by $30,000, which he explained was the value of the house and lot at 23 North Crest Road and the house and lot at 2928 Birds Mill Road, and by $15,210, which he explained was the value of the house and lot at 2009 McCaulie Avenue. [3] Respondent determined that the value of the house and lot at 622 Shannon Avenue was $10,000, rather than the $2,500 reported on the estate tax return. [4] Respondent in his notice of deficiency determined that the fair market value of the 10 mortgage notes which had been reported at a total value of $30,000 was the face amount of these notes or $55,747.38 and therefore increased the value of the *195 estate as reported by the $25,747.38 difference. Respondent increased the gross estate as reported by the balance in the two bank accounts at the date of decedent's death at the American National Bank and the account at the Hamilton National Bank and the account at the Hamilton National Bank. In explaining the increase with respect to the two accounts at the American National Bank and the checking account in decedent's name at the Hamilton National Bank, respondent stated that it was determined that these amounts were includable in decedent's gross estate and that, if it were ultimately determined that the bank accounts were accounts which decedent held jointly with another person, "it is determined that such bank account is includable in the gross estate under section 2040 of the Internal Revenue Code." Respondent in his notice of deficiency disallowed the charitable deduction of $5,750 claimed by the estate with the explanation that the amount "is not allowable under section 2055 of the Internal Revenue Code for the reason it is not ascertainable at the date of death how much, if any, of the bequest will be received by an organization *196 of the type described in section 2055." OPINION The issues here are purely factual. Apparently, Mrs. Griffin recognizes that the notice of deficiency was mailed within three years after the date of the filing of the estate tax return and therefore the assessment and collection of a deficiency was not barred by the provisions of section 6501(a)[5] at the time the notice was issued. Petitioner's contention seems to be that because, in correspondence to various persons in the Internal Revenue Service, Mrs. Griffin stated her moral objection to paying taxes for certain expenditures by the government and that any taxes she paid would be reduced by the percentage of the taxes she owed which she felt would be used for these purposes, she was the subject of a criminal investigation and more investigation than otherwise would have *197 been made of the estate tax return she filed on behalf of decedent's estate. None of the arguments made by petitioner go to the issue of whether assessment and collection of the tax was barred by the statute of limitations at the date of the issuance of the deficiency notice. From the stipulated facts, it is clear that the notice of deficiency was issued to the estate at the proper address of the executrix within the time provided by statute. The facts show that the notice was issued within three years from the date of the filing of the estate tax return and this is the time allowed by section 6501(a). Mrs. Griffin gave no explanation of why she considered no portion of the value of the interest of decedent in the estate of Newton A. Cobb to be includable in decedent's estate. Her position seemed to be that there was no certainty at the date of decedent's death as to the amount, if any, the estate would receive. While it is true *198 that the dissent filed on behalf of decedent against the will of Newton A. Cobb had not been allowed at the date of decedent's death, it had been filed and whatever interest decedent had in the estate of Newton A. Cobb was an asset of her estate. The fact that the dissent had not been finally ruled upon merely goes to the value of that asset. See Estate of Curry v. Commissioner,74 T.C. 540 (1980); Porter, Transferee v. Commissioner,49 T.C. 207 (1967). While respondent recognizes that under the holding in the Curry and Porter cases the fair market value of decedent's interest in the estate of Newton A. Cobb at the date of her death is the amount to be includable in decedent's estate rather than the actual amount received if the two differ, he argues that petitioner has failed to show that the value of decedent's interest in the estate of Newton A. Cobb at the date of her death was less than $200,000. The evidence certainly leaves much to be desired with respect to the value of the interest of decedent in the estate of Newton A. Cobb at the date of her death. At the time of decedent's death, the objection to the allowance of the widow's *199 amount under the laws of Tennessee had not been filed. Apparently it was known or could have been ascertained at the date of decedent's death that, if no contest were made with respect to her claimed right under Tennessee statutes, her estate would receive approximately $278,000. However, it did develop that her claim was contested and was litigated all the way to the Supreme Court of Tennessee. In our view, the record is sufficient to show that at the date of decedent's death any purchaser of her interest in the estate of Newton A. Cobb would purchase that interest anticipating the possibility of litigation and would therefore discount the amount to be paid for her interest in the estate of Newton A. Cobb by both the cost of litigation and litigation hazards. Respondent by valuing the interest at the amount actually received by the estate was only discounting the value of a widow's interest by the cost of the litigation. There is some testimony in the record as to the litigation hazards. Mrs. Griffin testified that whether a wife living separately from her husband was entitled to claim under the laws of Tennessee her statutory interest was a case of first impression and that it, *200 at least in her mind, was doubtful as to the outcome of the litigation. The various opinions of the Court give some indication that a dissent which was physically filed by the lawyer who appeared in Court on behalf of the dissenting spouse rather than personally by the spouse was a situation which previously had not been passed on by the Tennessee Supreme Court. There is also some indication from the opinions that the fact that Mrs. Cobb was living in a separate household from her husband raised a question as to her rights to claim under the Tennessee statutes. Certainly the lawyer representing decedent's estate had some misgivings since he advised the estate to settle for $200,000 and expressed his willingness in these circumstances to accept a $25,000 fee rather than the one-third fee he would ask if he won the case after litigation. This proposed settlement offer was not accepted. Our difficulty is in determining the amount by which to discount for the fact not only of litigation hazards but also the delay in receiving the funds because the litigation would proceed and cause a time delay in receipt even if decedent's estate was successful. Certainly a prospective purchaser *201 of the estate's interest in the estate of Newton A. Cobb would consider both of these factors even though ultimately the estate was compensated for the time delay. However, considering the evidence as a whole, we conclude that the fair market value of decedent's interest in the estate of Newton A. Cobb at the date of her death was $150,000 and that this interest in the estate of Newton A. Cobb should be included in decedent's gross estate. In our view, it is far from clear in the record that the deeds that decedent executed transferring two pieces of property to Mrs. Griffin and one to her son were delivered to the donee prior to decedent's death. From Mrs. Griffin's testimony, apparently she was shown the deed and it was placed among some of decedent's papers to which Mrs. Griffin believed she had access. It is questionable whether placing the deed among papers of the donor, even if the donee had access to the papers, would constitute delivery. However, it is not material whether the deeds were delivered since the record is clear that decedent had the full use of the properties deeded until the date of her death and that, even though affidavits to the contrary were filed, the *202 only consideration paid by Mrs. Griffin for the properties deeded to her was $1.00. Section 2036 provides for the inclusion in the gross estate of a decedent of any property transferred during his life without full and adequate consideration if he retained the possession and enjoyment of the property or the right to the income from the property until his death.Respondent argues that section 2036 requires the inclusion of the value of the properties which were the subject of the January 20, 1973, deeds in decedent's estate. The record here is clear that decedent did retain the right to income from the properties until the date of her death. She also apparently retained the use of one of the properties as a home and one as a business location. Mrs. Griffin testified that, when decedent told her about deeding the properties to her, she told decedent that she wanted decedent to have the use of the properties and any income from them for the rest of her life and that decedent did keep the properties and use them for the rest of her life. Although there is no testimony with respect to the conversations *203 between decedent and her son at the time decedent told him about the deed to the parcel which was going to him, the clear inference is that the same understanding existed since decedent did retain the use of and the income from the property as long as she lived. We therefore conclude that respondent correctly included the value of these properties in the gross estate of decedent.There is no evidence that the $44,210 which respondent concedes to be the value of the properties at the date of decedent's death is not the correct value. The record shows that the house at 622 Shannon Avenue was in very poor condition at the date of decedent's death. However, the record also shows that, with the expenditure of $1,500 in cash and some work done by Mrs. Griffin and her husband and her brother, the house was placed in sufficiently good condition to be sold for $10,000. Obviously, the $10,000 value that respondent placed on the house as of the date of decedent's death is incorrect. However, it is equally clear that the $2,500 value placed on the house in the estate tax return is incorrect. The house was clearly worth the amount for which it could be sold in the condition it was in at *204 the date of decedent's death. Although Mrs. Griffin and her husband and brother were able to do a good deal of the work themselves in fixing up the house and therefore spent only part of $1,500 for outside labor, in considering the value of the house, the cost of labor would have to be considered. Mrs. Griffin at one point estimated that perhaps $4,500 would be the value of the house to someone who purchased it to have it repaired with outside labor. Respondent, on brief, conceded a value of $6,000. Considering all the testimony in the record about the condition of the house, the amount of work that needed to be done on the house, and the type of work that needed to be done, we conclude that the fair market value of the house at 622 Shannon Avenue, Chattanooga, Tennessee, at the date of decedent's death was $5,000. The record shows that the 10 mortgage notes were on owner occupied properties. It also shows that the interest rate on these notes was 7 percent and Mrs. Griffin testified that she believed this was the going rate for such mortgages at the date of decedent's death. There is nothing in this record to show any error in respondent's determination that the mortgage *205 notes should be included in decedent's gross estate at their face value. The testimony of Mrs. Griffin was that all of the money in the four bank accounts was money that belonged to her mother and that her mother had put into the accounts from her own funds.It is also clear that, except for one account in the name of Peggy Cook Realty or Peggy June Griffin, the accounts were in the name of decedent and that decedent had the right to draw on the funds. There is some indication in the record that Mrs. Griffin might also have had authority to draw on these accounts. However, the record is far from clear in this regard. On the basis of this record, we conclude that the two accounts at the American National Bank and the checking account at the Hamilton National Bank were clearly the property of decedent and that the balance in each of these accounts is includable in her gross estate. With respect to the joint account of Peggy Cook Realty or Peggy June Griffin, the record is clear that all the funds placed in this account were placed there by decedent during her lifetime. Section 2040 provides *206 that the value of the gross estate shall include the value of all property to the extent of the interest therein held as joint tenants by decedent and any other person-- except such part thereof as may be shown to have originally belonged to such other person and never to have been received or acquired by the latter from the decedent for less than an adequate and full consideration in money or money's worth * * *. It is apparent that the joint account falls clearly within the provisions of section 2040 and the balance in that account at the date of decedent's death is includable in her gross estate. Section 2055(a) provides for the deduction from the gross estate of the value of bequests, legacies, devices, or transfers to certain specified charities. Section 2055(e)(2) provides that where an interest in property other than a personal residence passes from the decedent to or for the use of a charity and also an interest in the same property passes or has passed from the decedent to or for a use of a person other than charity, no deduction shall be allowed for the interest which passes *207 to or for the use of the charity unless certain specified conditions are met. The record shows that the property at 3227 South Street, Chattanooga, Tennessee, was not decedent's personal residence. Clearly, here, none of the conditions specified in section 2055(e) are met. See Estate of Brock v. Commissioner,71 T.C. 901, 906-907 (1979), affd. 630 F.2d 368 (5th Cir. 1980); section 20.2055-2(e)(2)(ii), Estate Tax Regs. Here, the grant to charity, if the vague provision can be considered as a grant to charity, not only fails to meet the requirements of section 2055(e) but is so contingent as to make it very uncertain that any amount would ever be received by the charitable contingent beneficiary. Furthermore, if the properties were sold at the value placed on them in the estate tax return and 10 percent were given to charity, the amount given to charity would be only approximately $900 instead of $5,750. On the basis of this record, we conclude that respondent properly disallowed the claimed charitable deduction of $5,750. Decision will be entered under Rule 155.
Footnotes
1. Respondent on brief conceded that the estate is entitled to an additional deduction as an administrative expense for an executrix fee paid in the amount of $20,000. Respondent also conceded that the value of the properties deeded by Mrs. Cobb to her son and daughter on January 20, 1973, was $44,210, rather than $45,210, and that the value of the house at 622 Shannon Avenue at the date of Mrs. Cobb's death was $6,000, rather than $10,000 as shown in the notice of deficiency.↩
2. Two other properties were not reported--a house and lot or lot and insurance proceeds on Coulter Road, Sale Creek, and a lot on East Terrace, Georgia. However, the inclusion of the first of these in the value of decedent's estate at $6,000 and the second at $400 was not placed in issue in this case.↩
3. Respondent, on brief, conceded that the value of these three properties was $44,210, rather than $45,210 as set forth in the statutory notice of deficiency.↩
4. Respondent, on brief, conceded that the value of this house and lot at the date of decedent's death was $6,000, rather than the $10,000 determined by him in the statutory notice of deficiency.↩
5. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the year here in issue.↩