T.C. Memo. 2001-225

UNITED STATES TAX COURT

ESTATE OF MICHAEL J. THOMAS, DECEASED,
HELEN Z. THOMAS, EXECUTOR, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 15734-99.                    Filed August 15, 2001.

<u>William J. Abraham</u>, for petitioner.

<u>John J. Boyle</u>, for respondent.

MEMORANDUM OPINION

COUVILLION, <u>Special Trial Judge</u>:  Respondent determined that
the estate was liable for the addition to tax under section
6651(a)(1), in the amount of $3,591, for failure to file its
Federal estate tax return timely.[1]  Based upon the estate tax

_____

        [1]    Unless otherwise indicated, all section references are
to the Internal Revenue Code.

return that was filed and the estate taxes shown on the return, respondent assessed additions to tax under section 6651(a)(1) and (2) in the respective amounts of $24,952.02 and $27,726.69. Those amounts were paid by the estate, as to which an application for refund was filed with respondent and subsequently denied. Thereafter, respondent proposed a deficiency in estate tax in the amount of $14,363 and an addition to tax thereon under section 6651(a)(1) in the amount of $3,591. The estate agreed to assessment of the $14,363 estate tax deficiency but did not agree to assessment of the $3,591 addition to tax, whereupon respondent issued the notice of deficiency for the addition to tax. In the petition, the estate challenges the section 6651(a)(1) addition to tax of $3,591 and claims an overpayment for the previously paid $24,952.02 and $27,726.69 additions to tax under section 6651(a)(1) and (2).

The issue for decision is whether the estate is liable for the additions to tax under section 6651(a)(1) and (2) for failure to file its Federal estate tax return timely and failure to pay the amount shown on the return, respectively. The Court's analysis of this issue includes the estate's claim to the refund for overpayment of the previously assessed and paid additions to tax under section 6651(a)(1) and (2). See Judge v. Commissioner, 88 T.C. 1175 (1987).

Some of the facts were stipulated, and those facts, with the annexed exhibits, are so found and are incorporated herein by reference. At the time the petition was filed, the legal residence of the executrix, Helen Z. Thomas, was Marietta, Ohio.

The decedent, Michael J. Thomas (decedent), died testate in Marietta, Ohio, on February 24, 1986. On May 6, 1986, decedent's will was admitted to probate in the Probate Court of Washington County, Ohio (probate court), and the probate court issued letters of authority appointing Helen Z. Thomas, who was decedent's wife (the executrix), as the executrix to administer decedent's estate. Soon thereafter, the executrix engaged an attorney, Robert Ellis (Mr. Ellis), to represent and assist her in the administration of decedent's estate. The due date for filing the Federal estate tax return for its estate was November 24, 1986. This date passed with neither an estate tax return nor an application for an extension of the due date being filed by the executrix on behalf of the estate.

On January 6, 1987, the executrix filed with the probate court an Inventory and Appraisal valuing decedent's estate at $600,147.33, which consisted of $218,618.73 in intangible personal property, $381,528.60 in real property, and four other assets for which no values were listed. The assets listed as undetermined in value were: (1) 150 shares of H.R.M., Inc., (2) 182 shares of Thomas, Inc., (3) 52 shares of Uncle Henry's, Inc.,

and (4) an interest in the Thomas Trust.  On each of the following subsequent dates, the executrix filed a partial Fiduciary's Account with the probate court listing the value of assets remaining in decedent's estate:

| Date | Total Value of Assets |
|------|----------------------|
| Apr. 24, 1987 | $799,259.53 |
| June 23, 1988 | 710,540.77 |
| Sept. 19, 1989 | 795,320.25 |
| Jan. 31, 1991 | 52,668.00 |
| Apr. 8, 1992 | 34,569.31 |

In each partial account filed with the probate court, the above-listed assets of undetermined value were again listed as of unknown value and apparently not included in the total value of assets reported.[2]

On July 26, 1991, the estate filed a suit against decedent's brother, Joseph J. "Fuzzy" Thomas (Mr. Thomas), and another individual[3] in the Court of Common Pleas of Washington County,

---

[2]     On Jan. 31, 1991, the executrix filed a Report of Newly Discovered Assets with the probate court, adding to the value of decedent's estate numerous shares of various stocks whose value totaled $180,342.89.  Also, the partial Fiduciary's account filed on Jan. 31, 1991, reflected a distribution of 182 shares of Thomas, Inc. stock of unknown value and reflected the value of 150 shares of H.R.M., Inc., as zero rather than unknown.  The April 8, 1992 account reflected 150 shares of H.R.M., Inc., at zero value and 52 shares of Uncle Henry's, Inc., and an interest in the Thomas Trust of unknown value.

[3]     The other defendant in the suit was Lester W. Bigley, who claimed that he had purchased certain real estate from the
(continued...)

Ohio (common pleas court), seeking the appointment of a trustee for the Thomas Trust, a determination of the assets held by the Thomas Trust, and a distribution of the trust assets to the remaining beneficiaries thereof. The Thomas Trust had been established in March 1948 by decedent, his brother Mr. Thomas, and their father as donors. These three donors were also designated as equal income beneficiaries of the Thomas Trust. Decedent, during his lifetime, served as the trustee of the Thomas Trust managing the assets and income thereof. The father predeceased both his sons.

Apparently, upon decedent's death, the Thomas Trust was left without a trustee, and there was some dispute among family members as to the nature and value of assets that were owned by the trust. Also disputed was whether or not the Thomas Trust was to terminate upon the death of decedent, and, if so, whether any of the assets thereof should be distributed to decedent's estate, or whether all were to be distributed to Mr. Thomas. The stated primary purpose of the suit was to have the common pleas court resolve these issues.

---

[3](...continued)
Thomas Trust prior to decedent's death. The parties eventually agreed that Mr. Bigley had purchased the subject real property and was entitled to a deed for the same. This issue constituted only one issue in the suit, and Mr. Bigley was dismissed from the suit upon delivery of a deed for the subject property.

On August 31, 1993, Attorney Michele Hilden Willard was appointed by the common pleas court as trustee of the Thomas Trust. On October 5, 1993, the common pleas court entered a pretrial order (agreed to by the parties), which decreed that the Thomas Trust terminated upon the death of decedent and that defendant Lester W. Bigley was entitled to a deed to the real property that he had purchased from the Thomas Trust prior to decedent's death. Additionally, the common pleas court ordered the trustee to file an inventory of the trust assets, to which each party would have the right to file an objection.

The trustee filed an inventory of Thomas Trust assets with the common pleas court on October 28, 1993. Both parties, decedent's estate and Mr. Thomas, filed objections, and hearings were held on December 10 and 14. On December 21, 1993, the common pleas court entered an order directing that all assets of the Thomas Trust in excess of $27,500 should be distributed equally to its two remaining beneficiaries; i.e., decedent's estate and Mr. Thomas.

On November 18, 1994, the common pleas court entered a Judgment Entry of Dismissal with Prejudice, ordering that: (1) 150 shares of Thomas, Inc. stock be distributed equally to decedent's estate and Mr. Thomas, (2) remaining parcels of real estate be distributed to Mr. Thomas, and (3) all remaining cash and cash equivalents minus the trustee's fee and a $1,000

contingency fund (a net of approximately $15,840.14) be distributed equally to decedent's estate and Mr. Thomas. On March 13, 1995, the trustee for the Thomas Trust submitted a final accounting, and on March 17, 1995, the common pleas court approved the accounting and discharged the trustee.

On October 12, 1995, the executrix filed a final Fiduciary's Account with the probate court reporting that all assets of decedent's estate had been distributed and disbursed. On March 26, 1996, the executrix filed an amended final Fiduciary's Account that reported minor differences in a few dollar amounts but still reflected distribution and disbursement of all assets. Both final accounts reflected an unknown value for the following assets: (1) 75 shares of Thomas, Inc. common stock, (2) 26 shares of Uncle Henry's, Inc., to Thomas Trust A, (3) 26 shares of Uncle Henry's, Inc., to Thomas Trust B, (4) 37 shares of Thomas, Inc. common stock to Thomas Trust A, and (5) 38 shares of Thomas, Inc. common stock to Thomas Trust B. On April 30, 1996, the probate court closed the estate and discharged the executrix.

The estate filed a Form 706, United States Estate Tax Return (estate tax return), on February 7, 1997, more than 10 years after the due date thereof. The estate tax return reported a gross estate of $2,047,294.06, a taxable estate of $863,470.06, and an estate tax liability of $110,906.76, all of which was remitted with the filing of the estate tax return. On the estate

tax return, the reported value of the estate's interest in the Thomas Trust was $202,167.60, consisting of real property and 75 shares of Thomas, Inc. stock less certain liabilities.

Neither party challenges the amount of the estate tax. As noted earlier, the sole issue is the estate's contention that the additions to tax under section 6651(a)(1) and (2) are not applicable, not only as to the section 6651(a)(1) addition to tax determined in the notice of deficiency, but also as to the section 6651(a)(1) and (2) amounts that were previously paid by the estate as to which a claim for refund was denied by respondent.

The addition to tax imposed under each paragraph of section 6651(a) applies "unless it is shown that such failure is due to reasonable cause and not due to willful neglect." The burden is on the taxpayer to prove that the failure is due to reasonable cause and not willful neglect. United States v. Boyle, 469 U.S. 241, 245 (1985); Davis v. Commissioner, 81 T.C. 806, 820 (1983), affd. without published opinion 767 F.2d 931 (9th Cir. 1985); Estate of Newton v. Commissioner, T.C. Memo. 1990-208. This is a "heavy burden". United States v. Boyle, supra at 245.

In order to establish reasonable cause, a taxpayer must show the exercise of ordinary business care and prudence and the inability to file the return or pay the tax within the prescribed time. Sec. 301.6651-1(c)(1), Proced. & Admin. Regs. In order to

disprove willful neglect, a taxpayer must prove that the late filing did not result from a "conscious, intentional failure or reckless indifference."  United States v. Boyle, supra at 245-246.  A conscious or intentional failure exists when the taxpayer was aware of the duty to file the return within the due date but failed to file the return under circumstances that do not justify such failure.  Reckless indifference is established when the taxpayer was aware of the duty to file on time but disregarded a known or obvious risk that the return might not be filed within the due date.  Estate of Campbell v. Commissioner, T.C. Memo. 1991-615.

The due date of the estate's Federal estate tax return was November 24, 1986, 9 months after the date of decedent's death. Sec. 6075(a).  The estate failed to apply for an extension of the due date to either file the return or pay the tax.[4]  The parties

---

[4]     The time for filing the estate tax return may be extended but normally for not more than 6 months, so the return will be due not more than 15 months following the date of a decedent's death.  Sec. 6081(a); sec. 20.6081-1(a), Estate Tax Regs.  Moreover, the time for payment of the amount of estate tax shown, or required to be shown, can be extended for up to 12 months or, in cases of reasonable cause, up to 10 years.  Sec. 6161(a)(1) and (2).  The Court notes that the standards of reasonable cause for the failure to file, on the one hand, and the failure to pay, on the other hand, are not identical.  United States v. Boyle, 469 U.S. 241 (1985), involved the failure to file and did not directly involve the failure to pay.  See Estate of LaMeres v. Commissioner, 98 T.C. 294 (1992), where sec. 6651(a)(1) and (2) was addressed repeatedly.  In the instant case, the estate made no separate argument with respect to the
(continued...)

stipulated that decedent's estate tax return was filed on February 7, 1997, more than 10 years after the due date of the return.  The parties also agree that the amount of tax shown on the return was remitted with the return.

The estate admits that it failed to file the estate tax return timely and failed to pay the estate tax timely.  However, the estate argues that such failures were due to reasonable cause and not due to willful neglect.  The estate first argues that the executrix was advised by her attorney and her certified public accountant (CPA) that it would be improper to file an incomplete estate tax return, and, thus, a return should not be filed until a determination could be made as to the assets that were to be included in decedent's estate.  Thus, the estate argues, the executrix was advised to delay preparation and filing of the estate tax return until the conclusion of the suit surrounding the Thomas Trust.  The estate contends that the filing of the estate tax return had to be delayed until the common pleas court issued an order for the distribution of the assets in the Thomas

---

[4](...continued)
failure to pay.  For example, the estate did not argue that it failed to pay due to the lack of funds or liquid assets.  Rather, the estate's argument is that it was entitled to delay both the filing of the return and payment of the tax for the same reason-- the uncertainty of the estate's assets.  Accordingly, the Court treats both the failure to file and failure to pay issues together.

Trust, so that the estate tax return would reflect an accurate reporting of the assets of decedent's estate.

The estate maintains that its inability to determine the amount and value of Thomas Trust assets that may or may not have been eventually distributed to the estate was beyond its control and did not result from a deliberate or conscious choice on its part, and, thus, the failure to file the return timely was not willful. Moreover, the estate argues that the executrix was an elderly housewife, unsophisticated in the handling of estate tax matters, and, thus, her reliance on the advice of her attorney and her CPA constituted reasonable cause for the late filing of the estate tax return.

Conversely, respondent argues that the additions to tax were properly assessed and determined, respectively, because the executrix had a nondelegable duty to file a timely tax return and to pay the tax, a duty which she failed to perform due to lack of ordinary business care and prudence. Respondent argues further that lack of information, pending litigation, and the executrix's reliance on the advice of her attorney and CPA did not establish reasonable cause for those failures. Respondent contends that the estate should have filed a timely estate tax return and timely paid the tax shown thereon based on the best information available at the time of the due date of the return. For reasons set forth herein, the Court agrees with respondent that the estate is liable for the additions to tax.

The attorney representing decedent's estate, Mr. Ellis, testified at trial that he was generally aware of the requirement of filing an estate tax return, but that he did not advise the executrix with respect to any such filing. In fact, Mr. Ellis could not recall having a conversation with the executrix regarding the estate tax return; however, Mr. Ellis stated that, if a conversation about taxes had occurred, "it would have been early on and essentially what would have been said was Mr. McCoy [the CPA] is taking care of the taxes." Mr. Ellis testified further that he did not hire the CPA to handle the tax matters of decedent's estate, and that he had assumed the executrix had done so since the CPA had prepared the family income tax returns for several years. Finally, Mr. Ellis stated that he never advised the executrix that no estate tax return was required to be filed.

The CPA testified that he was never directed to file or asked about filing an estate tax return prior to 1991, which was at least 4 years after the due date of the return. The CPA acknowledged that he was aware of the threshold estate tax filing requirements for decedents dying in the year 1986. However, when questioned at trial as to why he failed to file a request for an extension of the due date, the CPA replied: "For one thing, when we became involved with filing the estate return--I believe it was as late as 1991--the return was well past due and there is not much else we can do and, you know, the assets couldn't be determined at that point." He testified further that, in 1991,

he advised the executrix that the information needed to be collected and a return needed to be filed.  Nevertheless, a return was not filed until 1997.

In general, a taxpayer may establish reasonable cause for failing to file a timely return by establishing reasonable reliance on the advice of an accountant or attorney even if it is later established that such advice was erroneous or mistaken. See United States v. Boyle, 469 U.S. at 250; Estate of Paxton v. Commissioner, 86 T.C. 785, 820 (1986); Ketteman Trust v. Commissioner, 86 T.C. 91, 108 (1986).  The rationale for this rule is that a taxpayer is not expected to discern error in the substantive advice of an accountant or attorney.  "Ordinary business care and prudence" do not demand that the taxpayer challenge the professional, seek a second opinion, or try to monitor the provisions of the Internal Revenue Code himself. United States v. Boyle, supra at 251.

However, reliance on professional advice does not offer a taxpayer wholesale protection against liability for the addition to tax under section 6651(a)(1).  See United States v. Boyle, supra.  As the Supreme Court has noted, Congress intended to place upon the taxpayer the obligation of ascertaining and meeting the statutory deadline for filing tax returns except in a very narrow range of situations.  Id. at 249-250.  Accordingly, an executor cannot avoid liability for failing to file a timely

estate tax return by turning the matter over to his attorney.

Id.  As the Court held:

> It requires no special training or effort to ascertain
> a deadline and make sure that it is met.  The failure
> to make a timely filing of a tax return is not excused
> by the taxpayer's reliance on an agent, and such
> reliance is not "reasonable cause" for a late filing
> under section 6651(a)(1).  * * *

Id. at 252.

Here, the estate argues that the executrix failed to file

the estate tax return timely because she reasonably relied on the

advice of an attorney and a CPA and that, as a matter of law, the

return could not be filed until a determination was made as to

all assets of decedent's estate.  However, the estate failed to

establish that the executrix received any advice from Mr. Ellis

or Mr. McCoy about delaying the filing of the estate tax return,

either prior or subsequent to the due date for such return.[5]

---

[5]    The estate argues that the executrix also received and
relied upon similar advice from her daughter, Christina M. Thomas
(Tina Thomas), who is an attorney.  However, Tina Thomas did not
become licensed to practice law until July 1986, 5 months after
the death of decedent and 4 months prior to the due date of the
estate tax return.  Moreover, Tina Thomas's area of legal
specialty is energy law rather than decedents' estates or Federal
tax law.  During law school, Tina Thomas did take a class in
Federal income tax law but did not take a class in Federal estate
and gift tax law.  The Court finds that, during the years in
question, Tina Thomas was not a professional in the area of
Federal estate tax law upon whose advice regarding such matters
the executrix could have reasonably relied.  See, e.g., Sanders

(continued...)

Since the estate has failed to prove that the executrix received any such advice from any professional or expert adviser, the Court need not reach the question of whether the executrix could have reasonably relied on such advice.

Moreover, while the executrix's lack of knowledge as to the amount and value of Thomas Trust assets to eventually be distributed to decedent's estate may have been beyond her control, the Court does not believe that it was beyond her control to ascertain the due date for filing the estate tax return and to file timely an incomplete return, paying at least that portion of the tax in a timely fashion and disclosing the contingencies surrounding the assets in dispute. The Court is not convinced that complete and full knowledge of the amount and value of Thomas Trust assets to be distributed to the estate was essential to filing a timely estate tax return.

The regulations require only that an estate tax return be "as complete as possible". Sec. 20.6081-1(c), Estate Tax Regs. The regulations further permit supplemental information affecting the tax liability to be filed after the expiration of the extension period. Id. As a general matter, the unavailability

---

[5](...continued)
v. Commissioner, 21 T.C. 1012, 1019 (1954), affd. 225 F.2d 629 (10th Cir. 1955); Baclit v. Commissioner, T.C. Memo. 1989-576; Estate of Meredith v. Commissioner, T.C. Memo. 1981-72.

of information is not reasonable cause for failing to file a timely return. See Crocker v. Commissioner, 92 T.C. 899, 913 (1989); Elec. & Neon, Inc. v. Commissioner, 56 T.C. 1324, 1342-1344 (1971), affd. without published opinion 496 F.2d 876 (5th Cir. 1974); Cook v. Commissioner, T.C. Memo. 1999-50; Barber v. Commissioner, T.C. Memo. 1997-206. Unless a taxpayer applies for and obtains a timely extension of time to file, a taxpayer is expected to file a timely return based on the best information available and then file an amended return if necessary. See Estate of Vriniotis v. Commissioner, 79 T.C. 298, 311 (1982); Cook v. Commissioner, supra; Barber v. Commissioner, supra.

Moreover, pending litigation, even if the outcome affects the estate's final tax liability, is not reasonable cause for failing to file an estate tax return timely. Estate of Mayer v. Commissioner, 351 F.2d 617 (2d Cir. 1965), affg. 43 T.C. 403 (1964); Estate of Duttenhofer v. Commissioner, 49 T.C. 200 (1967), affd. per curiam 410 F.2d 302 (6th Cir. 1969); Estate of Pridmore v. Commissioner, T.C. Memo. 1961-12; Sever v. Commissioner, T.C. Memo. 1954-63. In fact, this Court has previously held that pending litigation affecting the fair market value of a decedent's interest in property at the time of death was not reasonable cause for untimely filing. Porter v. Commissioner, 49 T.C. 207, 226-227 (1967). In Porter, the Court held that the executor should have filed a timely estate tax

return by giving only tentative values pending the outcome of the litigation. In such situations, reasonable estimates are permitted and are preferable to the failure to file the estate tax return within the prescribed time. Id.

For decedents dying in the year 1986, the threshold requirement for filing a Federal estate tax return was a gross estate exceeding $500,000. Sec. 6018(a)(1), (3).[6] On January 6, 1987, approximately 6 weeks after the due date of the estate tax return, the executrix filed an inventory with the probate court that listed an aggregate value of assets in decedent's estate of $600,147.33. It is notable that the $600,147.33 value in this inventory did not include the values of other listed assets: (1) 150 shares of H.R.M., Inc., (2) 182 shares of Thomas, Inc., (3) 52 shares of Uncle Henry's, Inc., and (4) an interest in the Thomas Trust. Rather, the values of these assets were listed as "unknown".

It is clear to this Court that, at some time prior to the due date for filing the estate tax return, the executrix knew or should have known that the value of decedent's gross estate

---

[6] The estate makes assertions on brief that the value of decedent's estate after taking into account marital deductions would have fallen below the filing threshold. This argument ignores the fact that the estate tax return filing requirement is based on a gross estate figure rather than a taxable estate. The marital deduction is taken into account only with respect to the taxable estate. Secs. 2031, 2051, 2056.

exceeded $500,000, i.e., the filing threshold amount, even without inclusion of the assets involved in the Thomas Trust dispute.[7] Therefore, the Court cannot accept the estate's contention that the outcome of the common pleas court litigation would have determined whether an estate tax return was required to be filed. On this record, it appears that a Federal estate tax return would have been required to be filed even if decedent's estate had received none of the assets of the Thomas Trust involved in the litigation. Thus, the outcome of the common pleas court case would have had no effect on the necessity for filing a return.[8]

Moreover, when eventually filed, the estate tax return reported a $2,047,294.06 gross estate at the date of decedent's death. The gross estate consisted of $557,180 in real estate, $771,109.47 in stocks and bonds, $264,330.53 in mortgages, notes,

---

[7] Indeed, just as the Supreme Court stated in United States v. Boyle, 469 U.S. at 252, that it requires no special training or effort to ascertain a deadline and make sure that it is met, it requires no more special training nor effort to ascertain the dollar value threshold for filing a return. In any event, lack of knowledge that a return is required to be filed or of the due date thereof does not constitute reasonable cause. Cronin's Estate v. Commissioner, 164 F.2d 561, 566 (6th Cir. 1947), affg. on this issue 7 T.C. 1403, 1414 (1946).

[8] The Court finds it also notable that the suit regarding the Thomas Trust was not filed by the executrix until 4-1/2 years after the due date of the return, and that the estate tax return was not filed until 2 years following the final disposition of the Thomas Trust case.

and cash, $38,058.49 in jointly owned property (real estate and publicly traded stocks), and $416,615.57 in miscellaneous property. Listed as an item of miscellaneous property was "Thomas Trust -- 50% Interest", which was valued at $202,167.60 on the date of decedent's death. Compared to the remaining assets included in decedent's estate, the interest in the Thomas Trust would not have had a significant effect on the total value of decedent's gross estate. In fact, the interest in the Thomas Trust consisted of only approximately 10 percent of the entire value of decedent's gross estate. Thus, a timely estate tax return including all assets except the 50-percent interest in the Thomas Trust would have been substantially correct.

Regardless, therefore, of the dispute surrounding the assets held in the Thomas Trust, the executrix should have filed a timely Federal estate tax return with the best information available at the time, disclosing in the return that a dispute existed with respect to Thomas Trust assets and making an estimate of the value of those assets. At that time, the executrix could have paid the tax shown to be due on that return. Later, following the conclusion of the litigation, the executrix could have filed an amended return, including in decedent's estate the 50-percent interest in the Thomas Trust that was decreed by the common pleas court and paying any additional tax

due as a result thereof.[9]  Moreover, the executrix could have filed an application for a 6-month extension of the due date of the estate tax return (as well as an extension to pay the tax), allowing her additional time to compile information regarding the assets of decedent's estate.

Rather than following any such reasonable and prudent course of action, the executrix made no apparent attempt to comply with the estate tax return filing and estate tax payment requirements of the Internal Revenue Code.  Instead, the executrix chose to disregard these requirements until some 10 years after the due date of the return, thus failing to discharge her nondelegable duty.  See Estate of Geraci v. Commissioner, T.C. Memo. 1973-94, affd. 502 F.2d 1148 (6th Cir. 1974).  Moreover, the executrix did not appear at the trial of this case; therefore, the record is devoid of her testimony regarding her knowledge or actions surrounding the estate in the more than 10 years that followed decedent's death.  "The rule is well established that the failure of a party to introduce evidence within his possession, and which if true, would be favorable to him, gives rise to the presumption that if produced it would be unfavorable."  Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947); see also Estate of Fox v.

---

[9]  If this procedure had been followed, it is obvious that the bulk of the estate tax owed would have been paid on or before the due date of the return.

Commissioner, T.C. Memo. 1995-30, affd. without published opinion 100 F.3d 945 (2d Cir. 1996). Nevertheless, the evidence in the record suggests a lackadaisical, if not indifferent, attitude on the part of the executrix with respect to the preparation and filing of the estate tax return and payment of estate taxes.

The executrix in this case was not a naive, incapacitated, elderly citizen but rather an experienced businesswoman who operated a restaurant and night club into the early 1970s and thereafter assisted a cousin in operating a dress shop. There is also evidence in the record to suggest that, as late as 1984, 1985, and 1986, the executrix assisted decedent in the operation of a Schedule C business known as Club Continental. Moreover, the executrix was only 66 years of age at the time of her husband's death.

The executrix was charged with the duty of ascertaining the due date for filing the estate tax return. Additionally, as the deadline for filing the estate tax return approached, ordinary business care and prudence required that she utilize whatever information had been gathered and prepared to that point to file a timely return and to continue finalizing information for an amended return at a later date, a procedure she followed on numerous occasions with the probate court. Her failure to take these steps constituted willful neglect on her part.

On this record, the Court finds that the estate failed to prove that the failure to file a timely Federal estate tax return

and to pay timely the estate tax shown to be due was due to reasonable cause and not to willful neglect.[10]  Thus, the Court holds that the estate is liable for the additions to tax under section 6651(a)(1) and (2) which were previously assessed and paid and the amount determined by respondent in the notice of deficiency.  Respondent's determination in the notice of deficiency is sustained, and the estate is not entitled to a refund of amounts previously assessed and paid.

Decision will be entered

for respondent.

---

[10]    To the extent not explicitly stated in this opinion, the Court's application of the relevant law to the facts in this case applies equally to the addition to tax under sec. 6651(a)(2) and to the addition to tax under sec. 6651(a)(1).